Slip Op. 20-84

### UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COALITION OF AMERICAN FLANGE PRODUCERS, | |
| Plaintiff, | Before: Gary S. Katzmann, Judge Court No. 18-00225 |
| v. | *PUBLIC VERSION* |
| UNITED STATES, | |
| Defendant. | |

### OPINION

[The court remands Commerce's AD determination for further explanation.]

Dated:  June 17, 2020

Stephanie M. Bell and Daniel B. Pickard, Wiley Rein LLP, of Washington, DC, argued for plaintiff.

Geoffrey M. Long, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Tara K. Hogan, Assistant Director.  Of counsel was Kirrin Ashley Hough, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.  Of counsel on the brief was Daniel J. Calhoun, Assistant Chief Counsel.

Katzmann, Judge: This case presents questions about the operation of the substantial evidence standard as applied to the U.S. Department of Commerce's ("Commerce") treatment of a foreign producer's home market sales database in an antidumping ("AD") investigation and determination.  It involves a challenge to Commerce's calculation of normal value ("NV") in determining appropriate AD duty margins for a foreign producer and exporter, Chandan Steel Limited ("Chandan"), in the importation of stainless steel flanges from India into the United States. Plaintiff Coalition of American Flange Producers ("Coalition") is an ad hoc association whose

members manufacture stainless steel flanges in the United States.  Compl. at 2, Dec. 6, 2018, ECF No. 9.  Coalition brings this action against the United States ("the Government"), to challenge certain aspects of Commerce's <u>Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Critical Circumstances Determination</u>, 83 Fed. Reg. 40,745 (Dep't Commerce Aug. 16 2018), P.R. 411 ("<u>Final Determination</u>") and accompanying issues and decision memorandum (Dep't Commerce Aug. 10, 2018), P.R. 406 ("IDM"), in which Commerce determined that certain reported sales should not be included in Chandan's home market sales database and that, therefore, Chandan's home market of India was not viable as a basis for determining NV.  Commerce accordingly used Chandan's reported third-country market sales to determine the appropriate AD margins.  <u>Id.</u>

Coalition asserts that Commerce's determination to exclude certain sales from Chandan's home market database was unsupported by substantial evidence and otherwise not in accordance with law because Commerce failed to provide an adequately reasoned explanation.  Compl. at 4. Accordingly, Coalition asks that the court "remand Commerce's determination with respect to its decision that Chandan's home market was not viable for additional consideration."  Pl.'s Mot. for J. on Agency R. at 18, June 17, 2019, ECF No. 23 ("Pl.'s Br.").  The Government responds that the court should uphold the <u>Final Determination</u>, asserting that Coalition's argument is not meritorious and that "Commerce's determination was supported by substantial evidence and in accordance with law."  Def.'s Resp. in Opp'n to Pl.'s Mot. for J. on Agency R. at 11, Sept. 10, 2019, ECF No. 27 ("Def.'s Br.").  The court concludes that Commerce failed to provide a sufficient explanation of its findings on the record to permit judicial review.  Therefore, the court remands this matter to Commerce for a more reasoned explanation of its classification of a challenged sale as an export sale and its 19 U.S.C. § 1677b(a)(1)(C) finding of home market non-viability.

# BACKGROUND

## I.    *Legal Framework*

Dumping occurs when a foreign company sells goods in the United States at a lower price than the company charges for the same product in its home market.  Sioux Honey Ass'n v. Hartford Fire Ins. Co., 672 F.3d 1041, 1046 (Fed. Cir. 2012).  This practice constitutes unfair competition because it permits foreign producers to undercut domestic companies by selling products below reasonable fair market value.  Id. at 1046–47.  To address the harmful impact of such unfair competition, Congress enacted the Tariff Act of 1930, which empowers Commerce to investigate potential dumping and, if necessary, to issue orders instituting duties on subject merchandise.  Id.  When Commerce concludes that duties are appropriate, the agency is required to determine margins as accurately as possible.  Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

Pursuant to 19 U.S.C. § 1673, Commerce imposes AD duties on foreign goods if it determines that the goods are being, or are likely to be, sold at less than fair value, and the International Trade Commission concludes that the sale of the merchandise below fair value materially injures, threatens, or impedes the establishment of an industry in the United States.  Diamond Sawblades Mfrs. Coal. v. United States, 866 F.3d 1304, 1306 (Fed. Cir. 2017).  Merchandise is sold at less than fair value when the price the producer charges in its home market, the NV, is greater than the price charged for the product in the United States, the export price.  Union Steel v. United States, 713 F.3d 1101, 1103 (Fed. Cir. 2013) (quotation omitted).  The AD duty is calculated by determining the difference between the NV and the export price for the merchandise.  19 U.S.C. § 1673.

NV is ordinarily computed by looking to the sales price of the subject merchandise in the exporting country, the home market.  19 U.S.C. § 1677b(a)(1)(B)(i).  However, when the volume of subject merchandise the producer sells in its home market is less than five percent of the quantity of the merchandise the producer sells in the United States, Commerce may look to third-country sales to calculate the appropriate NV.  See 19 U.S.C. § 1677b(a)(1)(C); 19 C.F.R. § 351.404(b). "To determine whether a sale is a home market sale, Commerce objectively assesses whether, given the particular facts and circumstances, a producer would have known that the merchandise will be sold domestically or for export." Stupp Corp. v. United States, 43 CIT __, __, 359 F. Supp. 3d 1293, 1310 (2019) (citing INA Walzlager Schaeffler KG v. United States, 21 CIT 110, 123– 25, 957 F. Supp. 251, 263–64 (1997)).  If Commerce concludes that a producer knew or had reason to know, at the time of the sale, that the merchandise was destined for export, Commerce may exclude the sale from the home market database. INA Walzlager Schaeffler, 957 F. Supp. at 264– 65.  In making this determination, Commerce must "diligently inquire into allegations of knowledge and render its conclusion based on all relevant facts and circumstances" in the record. Stupp, 359 F. Supp. 3d at 1310.  Further, Commerce's responsibility to conduct a diligent inquiry requires the agency to examine evidence presented by interested parties "which a reasonable mind would accept as calling into question whether respondents were able to distinguish home market sales destined for consumption in the home market from home market sales destined [for export]." Fed.-Mogul Corp. v. United States, 17 CIT 1015, 1020–21, 15 ITRD 2233 (1993).

## II.    *Factual and Procedural History*

On August 16, 2017, Coalition filed a petition with Commerce regarding the importation of certain stainless steel flanges from India and the People's Republic of China. Stainless Steel Flanges from India and the People's Republic of China: Initiation of Less-Than-Fair-Value

Investigations, 82 Fed. Reg. 42,469 (Dep't Commerce Sept. 11, 2017), P.R. 18.  On September

11, 2017, Commerce initiated an AD investigation into the importation of stainless steel flanges

from India from the period of July 1, 2016 to June 30, 2017.  Id.  Commerce selected Chandan as

one of three mandatory investigation respondents[1] and issued a questionnaire to Chandan seeking

information on its sales of stainless steel flanges.  See Mem. from C. Canales to E. Yang re:

Investigation of Stainless Steel Flanges from India:  Respondent Selection at 1 (Dep't Commerce

Oct. 3, 2017), P.R. 29; Letter from P. Walker to Chandan Steel Ltd., re: Stainless Steel Flanges

from India: Comments on Volume of Home Market Sales Destined for Consumption in Home

Market at 1 (Dep't Commerce Oct. 20, 2017), P.R. 46.

Shortly thereafter, Chandan submitted a letter to Commerce regarding its home market

sales.  Letter from Chandan Steel Ltd. to Sec'y of Commerce re: Certain Stainless Steel Flanges

from India, Comments on Volume of Home Market Sales Destined for Consumption at 1 (Oct. 18,

2017), P.R. 40, C.R. 13 ("Chandan's Initial Letter").  Chandan noted that it was aware that its

home market sales of merchandise under investigation totaled [[          ]] kilograms, equivalent

---

[1] In AD duty investigations or administrative reviews, Commerce may select mandatory respondents pursuant to 19 U.S.C. § 1677f-1(c)(2), which provides:

> If it is not practicable to make individual weighted average dumping margin determinations [in investigations or administrative reviews] because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to-
>
> > (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
> >
> > (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

to [[         ]] of its aggregate sales of subject merchandise in the United States, which would make

its home market viable for calculating NV.  See id.  Chandan expressed, however, that it had reason

to believe that its sale to [[                              ]] of [[        ]] kilograms of subject

merchandise should be treated as an export sale.  Id. at 1–3.  Accordingly, Chandan asserted that

its home market sales should be reduced by [[         ]], bringing the total home market sales to [[

    ]] of its aggregate sales of subject merchandise in the United States.  Id. at 1, 3.  As such,

Chandan posited that its home market was not a viable basis for calculating NV.  Id. at 4; see 19

U.S.C. § 1677b(a)(1)(C); 19 C.F.R. § 351.404(b).

        In that initial letter, Chandan articulated three reasons for its position.  Chandan's Initial

Letter at 2.  First, the company stated that its initial offer to the customer, [[

                                    ]], was quoted in U.S. dollars and marked for

delivery in [[         ]], and that it was only upon the customer's later insistence that the final

purchase order was received from [[      ]] and quoted in Indian Rupees for delivery in [[

]].  Id.  Second, the purchase order specified that the goods would carry mill testing reports

compliant with [[           ]], a certification that is widely accepted for goods bound for export

to [[                              ]] states.  Id.  Finally, Chandan notes that [[

    ]]'s financial statements did not reflect any domestic sales for the years ending March 31,

2015 or March 31, 2016.  Id.

        Commerce replied to Chandan's October 18, 2017 letter and requested that Chandan

provide further specific information in response to the previously issued questionnaire regarding

its sales of stainless steel flanges in both the home market and third country markets.  Letter from

P. Walker to Chandan Steel Ltd., re: Stainless Steel Flanges from India: Comments on Volume of

Home Market Sales Destined for Consumption in Home Market at 1 (Dep't Commerce Oct. 20,

2017), P.R. 46.  Chandan responded by reaffirming its position regarding its home market sales and provided information on its third-country market sales.  Letter from Chandan Steel Ltd. to Sec'y Commerce, re: Certain Stainless Steel Flanges from India, Chandan Steel Ltd.'s Submission of Resp. to Sec. A of Questionnaire at 1–6 (Oct. 31, 2017), P.R. 58–60.

Subsequently, Coalition wrote to Commerce commenting on Chandan's Section A Questionnaire Response.  Letter from Wiley Rein LLP to Sec'y Commerce, re: Stainless Steel Flanges from India:  Petitioners' Comments on Chandan's Sec. A Questionnaire Resp. (Nov. 20, 2017), P.R. 86, C.R. 45 ("Petitioners' Initial Comments").   Coalition challenged Chandan's assertion that the [[      ]] order should be treated as an export sale, noting that it was ultimately made in Indian Rupees and delivered in [[        ]].[2] Id. at 2.  Chandan thereafter submitted further information to Commerce in response to Sec. B, C, and D of Commerce's questionnaire.  Letter from Chandan Steel Ltd. to Sec'y Commerce, re: Stainless Steel Flanges from India, Chandan Steel Ltd.'s Submission of Resp. to Sec. B, C, and D of Questionnaire (Nov. 30, 2017), P.R 102–106.

In response to Coalition's comments, Chandan wrote to Commerce asserting that Chandan's Initial Letter "contain[ed] all relevant facts and evidences [sic] establishing the quantum of home market sales for consumption in India."  Letter from Chandan Steel Ltd. to Sec'y Commerce, re: Certain Stainless Steel Flanges from India (A-533-877), Rebuttal on Comments Filed by Petitioners on Questionnaire Response by Chandan at 5 (Dec. 8, 2017), P.R. 119, C.R. 128 ("Chandan's Questionnaire Rebuttal").  Chandan also pointed out that [[      ]] is a subsidiary and under the control of [[                              ]], a member of Coalition.  See id.

---

[2] Further mentions of the "challenged sale" refer to Chandan's sale to [[      ]], which Coalition, in the underlying investigation and in this litigation, contests was improperly classified as a sale that Chandan knew was intended for export.

Chandan asked Commerce to request "details outlined in the letter dated October 18, 2017 by Chandan from [Coalition]." Id.  The company asserted that this requested evidence "would conclusively establish the assertions made by Chandan and provide evidences [sic] to support the treatment of such sales by Chandan in its questionnaire responses." Id. at 5–6.  Commerce did not request information or evidence from Coalition or its constituent members. See Def.'s Resp. to Ct.'s Questions in Advance of Oral Arg. at 13, Apr. 6, 2020, ECF No. 43 ("Def.'s Suppl. Resp.").

In comments submitted regarding Chandan's Section B response, Coalition again challenged Chandan's characterization of the [[      ]] sale as an export sale.  Letter from Wiley Rein LLP to Sec'y Commerce, re: Stainless Steel Flanges from India:  Petitioners' Comments on Chandan's Sec. B Questionnaire Resp. at 2–3 (Dec. 14, 2017), P.R. 136, C.R. 147.  Moreover, Coalition argued that even if the challenged sale was not included in Chandan's home market sales database, Chandan's home market sales [[

]]. Id. at 3.  Accordingly, Coalition urged Commerce to require Chandan to report its home market sales to "allow the Department to consider the evidence on the record . . . and, regardless of its ultimate determination, have the proper information to calculate the dumping margin." Id.  Coalition expressed concern that if Commerce failed to do so, "but subsequently determin[ed] that Chandan should have reported home market sales, any such determination may effectively be rendered moot if there is not sufficient time to collect and analyze such data." Id.

Commerce subsequently concluded in a preliminary determination that stainless steel flanges from India were being, or were likely to be sold, in the United States at less than fair value and that AD duties were appropriate. Stainless Steel Flanges from India: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical

Circumstance, Postponement of Final Determination and Extension of Provisional Measures, 83 Fed. Reg. 13,246, 13,246–47 (Dep't Commerce Mar. 28, 2018), P.R. 339 ("Preliminary Determination").  Regarding the appropriate NV market for Chandan, Commerce simply stated: "we determined that the aggregate volume of home market sales of the foreign like product for Chandan was less than five percent of the aggregate volume of its U.S. sales of subject merchandise.  Therefore, we used third-country market sales as the basis for NV for Chandan." Preliminary Decision Mem. accompanying Stainless Steel Flanges from India at 29 (Dep't Commerce Mar. 19, 2018), P.R. 327.

Coalition, in response to the Preliminary Determination, filed a brief again arguing that Chandan failed to demonstrate that it knew or should have known, at the time of the sale, that the merchandise at issue was bound for export to countries other than India.  Letter from Wiley Rein LLP to Sec'y Commerce, re: Stainless Steel Flanges from India: Case Brief Regarding Chandan Steel at 4 (June 19, 2018), P.R. 401, C.R. 443 ("Petitioner Case Brief").  Specifically, Coalition observed that while the challenged purchase order called for a mill testing certification compliant with [[              ]], "Chandan provided no indication that these certifications would not be used for sale in India" and that [[                              ]] provided by Chandan included the same [[            ]] mill testing requirement.  Id. at 5.  Moreover, Coalition argued that [[        ]] financial report, provided by Chandan, was not relevant to the issue because the report covered a period that predated the AD period of investigation.  Id.  Finally, Coalition asserted that Commerce had previously found that Indian law both required a buyer to inform a seller when merchandise was purchased for export and required the seller to report the transaction as an export sale.  Id. at 6.  Accordingly, Coalition asserted, "Chandan would have

definitively known at the time of the sale whether the sales [[

]].” Id.

In its rebuttal brief, Chandan highlighted additional evidence in the record that it had not previously cited as indicative of its knowledge that the challenged sale was for export.  Letter from Chandan Steel Ltd. to Sec'y Commerce re: Certain Stainless Steel Flanges from India, Rebuttal Comments to Case Brief on Chandan filed by Petitioners dated June 19, 2018 at 2–3 (June 25, 2018), P.R. 402, C.R. 444 (“Chandan's Case Rebuttal”).  Specifically, Chandan emphasized that its sales contract with [[       ]] reflected an agreement that the packaging of the merchandise would be of export quality and that the goods would be stamped with the logo of [[          ]].  Id. at 3.

On August 16, 2018, Commerce issued its Final Determination, in which it continued to find that stainless steel flanges from India were being, or were likely to be, sold in the United States at less than fair value.  Final Determination at 40,475.  Commerce also continued to find that Chandan's home market was not viable for calculating NV.  IDM at 37.  Specifically, Commerce wrote: “[Coalition's] argument that Chandan's home market is viable, and therefore NV should be based on home market sales prices, is unsubstantiated.  As a result, Commerce finds the comparison market viable . . . .”  See id.  For this conclusion, Commerce relied on the two provisions in Chandan's sales contract with [[      ]], which called for packaging of export quality and for the merchandise to be stamped with the logo of [[          ]].  Id.  As a result, Commerce calculated an AD margin of 19.16 percent for Chandan.  Final Determination at 40,476.

Coalition then filed a complaint, on December 6, 2018, challenging the portions of Commerce's Final Determination pertaining to Chandan's home market.  Compl. at 3–5.  On June 17, 2019, Coalition filed a revised Rule 56.2 motion for judgment on the agency record, arguing

that Commerce's findings on Chandan's home market sales were unsupported by substantial

evidence and otherwise not in accordance with the law.  Pl.'s Br. at 10, 15.  The Government

responded to Coalition's motion on September 10, 2019.  Def.'s Br.  Coalition filed a reply brief

to the Government's opposition on October 9, 2019.  Pl.'s Reply Br. Oct. 9, 2019, ECF No. 29

("Pl.'s Reply").  Prior to hearing oral argument, the court issued questions to the parties on March

25, 2020, ECF No. 38, to which the parties responded in writing, Pl.'s Resp. to Ct.'s Questions for

Oral Arg., Apr. 6, 2020, ECF No. 42 ("Pl.'s Suppl. Resp."); Def.'s Suppl. Resp.  The court held

oral argument on April 9, 2020.  ECF No. 44, available at https://www.cit.uscourts.gov/audio-

recordings-select-public-court-proceedings ("Oral Arg.").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C.

§ 1516a(a)(2)(A)(i)(II) and 19 U.S.C. § 1516a(a)(2)(B)(i).  The standard of review is governed by

19 U.S.C. § 1516(a)(b)(1)(B)(i), which provides that "[t]he court shall hold unlawful any

determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the

record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1).  Substantial evidence

"has been defined as 'more than a mere scintilla,' as 'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  Ta Chen Stainless Steel Pipe, Inc. v. United

States, 298 F.3d 1330, 1335 (Fed. Cir. 2002) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197,

229 (1938)).  The substantiality of evidence must account for anything in the record that reasonably

detracts from its weight.  CS Wind Vietnam Co. v. United States, 832 F.3d 1367, 1373 (Fed. Cir.

2016) (citing Gerald Metals, Inc. v. United States, 132 F.3d 716, 720 (Fed. Cir. 1997)); SeAH

Steel Corp. v. United States, 34 CIT 605, 607, 704 F. Supp. 2d 1353, 1355 (2010) (noting that

Commerce must examine the record and provide a reasoned analysis "if [its determination] is to

be characterized as supported by substantial evidence and otherwise in accordance with law").

This includes "contradictory evidence or evidence from which conflicting inferences could be

drawn." Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir.

1994) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951)).

        Commerce must also examine the record and provide an adequate explanation for its

findings such that the record demonstrates a rational connection between the facts accepted and

the determination made.  See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463

U.S. 29, 43 (1983); Jindal Poly Films, Ltd. of India v. United States, 43 CIT __, __, 365 F. Supp.

3d 1379, 1383 (2019).  Commerce's findings may be supported by substantial evidence despite

the possibility that two inconsistent conclusions may be drawn from the record.  Aluminum

Extrusions Fair Trade Comm. v. United States, 36 CIT 1370, 1373, 34 ITRD 2119 (2012).

Moreover, the agency is not required to address every piece of evidence submitted by the parties,

and Commerce is presumed to have considered all the evidence in the record absent a showing to

the contrary.  Id. (quoting USEC Inc. v. United States, 34 F. App'x 725, 731 (Fed. Cir. 2002)).

Nonetheless, Commerce is obligated to respond to those arguments made by interested parties that

bear on issues material to Commerce's determination.  Itochu Bldg. Prods., Co. v. United States,

40 CIT __, __, 163 F. Supp. 3d 1330, 1337 (2016).

## DISCUSSION

        Coalition argues that (1) Commerce's determination that the challenged sale was for export

is unsupported by substantial evidence because Commerce failed to provide an adequate

explanation for its findings and failed to demonstrate a rational connection between the facts found

and the determination made; and (2) Commerce did not act in accordance with law because it failed

to undertake a diligent inquiry in response to Coalition's comments.  Pl.'s Br. 10–18. For the

reasons stated below, the court (1) remands Commerce's determination that the challenged sale was for export because that determination was not adequately reasoned and thus not supported by substantial evidence, but (2) concludes that Commerce did meet its obligation to conduct a diligent inquiry. The court takes no position, however, on the correctness of Commerce's determination. Rather, the court finds only that Commerce failed to meet its obligation to provide a reasoned explanation for its decision and, therefore, cannot sustain its <u>Final Determination</u> here.

> **I.    *Commerce's Determination Was Not Adequately Reasoned Because Commerce Failed to Discuss Material Issues.***

In its <u>Final Determination</u>, Commerce concluded that Chandan's home market was not viable for calculating NV because its home market sales were less than five percent of its sales of subject merchandise to the United States. IDM at 37. In support of this conclusion, Commerce wrote:

> Specifically, we find that the sales contract contains the packing terms that Chandan agreed to with the buyer, which shows an agreement to make the packaging of export quality. Thus, Chandan provided documentary evidence demonstrating that it knew, at the time of the sale, that the ultimate destination was outside of India. Specifically, the sales contract stated that the flanges were to be marked with an affiliate's logo that was outside of India. Therefore, in accordance with section 773(a)(1)(C) of the Act, we find that Chandan's home market sales are not viable.

<u>Id.</u> (footnote omitted).

Coalition argues that Commerce's determination cannot be sustained because Commerce failed to address evidence and arguments raised by Coalition during the investigation that were material to its determination, and that Commerce failed to provide an adequate explanation of its reasoning. Pl.'s Br. at 10–18; Pl.'s Reply at 6–9. Specifically, Coalition asserts that Commerce was required to discuss: (1) the three factors that Chandan initially relied on to support its argument that it had knowledge the sale was made for export -- the terms of the sale offer and counteroffer, the mill testing certification, and the [[      ]]

financial statements; (2) the [[                                        ]], which contained a

provision calling for export quality packaging; (3) Chandan's choice not to record the

challenged sale it in its [[          ]] sales database despite the contract provision calling for

merchandise to be marked with a [[            ]] affiliate logo; and (4) Coalition's assertion that

Commerce "has previously found that Indian law requires that buyers tell a seller that

merchandise is being purchased for export." Pl.'s Suppl. Resp. at 8. See also Pl.'s Br. at 12–

14.

        The Government replies that Commerce "must take the record as a whole into account,

but it is not required to explicitly address all evidence in the record." Def.'s Suppl. Resp. at 4

(citing Nucor Corp. v. United States, 28 CIT 118, 233–34, 318 F. Supp. 2d 1207, 1247 (2004),

aff'd, 414 F.3d 1331 (Fed Cir. 2005)).  The Government argues that, contrary to Coalition's

assertions, it did address all material issues. Id. at 8.  Specifically, the Government emphasizes

that the key issue in determining how to classify the challenged sale was whether Chandan had

knowledge that the goods at issue were not for home market consumption and that Commerce

fully addressed this issue. Id. at 9.  Moreover, the Government posits that Coalition has failed

to demonstrate that the evidence it identified as detracting did indeed detract from Commerce's

determination and that Coalition has therefore also failed to show that Commerce was required

to discuss that evidence on the record. Def.'s Br. at 9–10.

        In every case, Commerce must "examine the record and articulate a satisfactory

explanation for its action." CS Wind Vietnam, 832 F.3d at 1376 (quoting Yangzhou Bestpak

Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1378 (Fed. Cir. 2013)).  Commerce is not

required to make an explicit response to every piece of evidence or argument raised by

interested parties. Nucor Corp., 318 F. Supp. 2d at 1247 (quoting USEC, 34 F. App'x at 731).

However, Commerce must discuss issues of law and fact that are material to its determination,

including any evidence that reasonably detracts from its determination.  See CS Wind Vietnam,

832 F.3dat 1373; Timken U.S. Corp. v. United States, 421 F.3d 1350, 1355–56 (Fed. Cir. 2005);

Itochu Building Prods. Co., 163 F. Supp. 3d at 1337.  Further, Commerce has "an 'obligation'

to address important factors raised by comments from petitioners and respondents."  SKF USA,

Inc. v. United States, 630 F.3d 1365, 1374 (Fed. Cir. 2011).  Finally, Commerce's explanation

must be adequately detailed to permit judicial review.  See Timken U.S., 421 F.3d at 1355 ("[I]t

is well settled that an agency must explain its action with sufficient clarity to permit 'effective

judicial review.'" (quoting Camp v. Pitts, 411 U.S. 138, 142–43 (1973))); NMB Singapore Ltd.

v. United States, 557 F.3d 1316, 1319 (Fed. Cir. 2009) ("[W]hile its explanations do not have

to be perfect, the path of Commerce's decision must be reasonably discernable to a reviewing

court.").

Commerce's Final Determination did not meet these standards.  The court agrees with

Coalition that Commerce failed to adequately explain its decision to treat the challenged sale

as an export, rather than home market, sale and that Commerce was required to address some

of Coalition's arguments on the record.  The court finds that Commerce did not address several

issues raised by Coalition that were material to the agency's determination and thus did not

"articulate a satisfactory explanation" for its decision.  See CS Wind Vietnam, 832 F.3d at 1376

(quoting Yangzhou Bestpak Gifts, 716 F.3d at 1378).  For the reasons discussed below,

evidence pertaining to Chandan's sales agreements and the challenged sale raised material

issues that Commerce was obligated to discuss on the record, including (1) the export quality

packaging  provision  in  Chandan's  [[                                                    ]], (2) Chandan's

treatment of the agreement's logo provision, and (3) the final payment and delivery terms of the sale.

### A. Sales Agreement Packaging Provision

Coalition argues now, and previously as a petitioner before Commerce, that Commerce's reliance on the packaging term in the challenged sales agreement needed to be explained on the record because the same provision also appears in Chandan's [[

]].  See Pl.'s Br. at 12.  According to Coalition, the [[

]] contained evidence that detracted from a conclusion that Chandan knew the challenged sale was for export and therefore Commerce was required to provide a reasoned analysis for its decision to rely on the provision in the [[     ]] sales agreement nonetheless.  Id.  The Government does not specifically address this argument but refers to the packaging provision in arguing that the facts of the case, taken together and considered holistically, demonstrate Chandan's knowledge.  Def.'s Br. at 8.

The facts here are analogous to those in Stupp Corp., 359 F. Supp. 3d 1293, on which Coalition relies.  See, e.g., Pl.'s Br. at 16–18.  There, the plaintiff-intervenor challenged Commerce's decision to include certain sales in the respondent's home market database.  Stupp Corp., 359 F. Supp. 3d at 1309.  Plaintiff-intervenor argued that Commerce failed to address record evidence that suggested the respondent should have known the merchandise at issue would be exported for consumption without further processing.  Id. at 1310.  While Commerce noted that the challenged sales included sales made to one customer that may have further consumed the merchandise in the home market prior to export, the court found that Commerce "fail[ed] to confront the remaining evidence tending to detract from its determination."  Id. at 1310–11.  The court reasoned that Commerce had not explained why the existence of one

customer that consumed the merchandise before exporting it "implies a lack of knowledge," where the record also contained evidence that merchandise sold to another customer was "exported without being further manufactured." Id. at 1311.

As in Stupp Corp., Commerce here concluded that the packaging provision in the challenged sales agreement constituted documentary evidence of Chandan's knowledge without providing any discussion of the existence of the same provision in the [[

                    ]], which tends to detract from its determination. See IDM at 37. Because the evidence in the record suggested that an export quality packaging provision may be indicative of either a home market or an export sale, Commerce needed to explain the logic supporting its decision to rely on the provision in its Final Determination. See Stupp Corp., 359 F. Supp. 3d at 1311; Fed.-Mogul Corp., 17 CIT at 1020–21 (observing that Commerce must discuss "evidence which a reasonable mind would accept as calling into question whether respondents were able to distinguish home market sales destined for consumption in the home market from home market sales destined for [export]").

The court concludes that Commerce should have addressed this detracting evidence and Coalition's comments on this point. The existence of the export quality packaging provision in both the challenged sales agreement and the [[                                        ]] raised a meaningful question about Chandan's ability to identify an export sale based on such a provision.

### B.    *Sales Agreement Logo Provision*

Coalition further contends that Commerce failed to sufficiently explain its conclusion regarding the logo provision of the challenged sales contract. Pl.'s Br. at 13–14. The Government counters that Chandan's agreement to stamp the merchandise with the logo of a [[

     ]] affiliate is evidence that Chandan knew the merchandise would be exported outside its home market. Def.'s Br. at 7. The Government also observes that "it was not incumbent upon Chandan" to know the specific country in which the merchandise would ultimately be sold. Def.'s Br. at 8 (citing <u>INA Walzlager Schaeffler KG</u>, 957 F. Supp. at 263–64). Coalition points out, however, that Chandan asserted it did not know the final destination of the merchandise. Pl.'s Br at 14. Chandan classified the transaction as a third-country market sale but chose not to include it in the company's [[     ]] sales database. <u>Id.</u> at 14 n.2. Accordingly, Coalition argues that "it is not reasonable to conclude on the one hand that the use of a logo for a [[    ]] company necessarily means the merchandise is not being sold in India and on the other hand that the logo does not provide any indication of where the merchandise is being sold outside of India." Pl.'s Reply at 4–5. Finally, Coalition asserts that there is no evidence showing that a [[    ]] affiliate logo could not be used on merchandise sold in the home market. Pl.'s Br. at 16.

     The Government is correct that, under <u>INA Walzlager</u>, a producer need not know the final destination of merchandise sold so long as the producer has actual or constructive knowledge it will be exported outside the home market. <u>See</u> 957 F. Supp. at 263–64. Therefore, based on its experience and expertise, Commerce might have inferred that the logo provision was evidence that Chandan knew the merchandise would be exported, even if Chandan did not consider the logo indicative of the specific final sales market. On the other hand, it also would have been reasonable for Commerce to conclude that the logo provision did not demonstrate that Chandan knew the sale was made for export. The court must accord significant deference to Commerce's experience and expertise when reviewing AD determinations because they "involve complex economic and accounting decisions of a technical nature." <u>Fujitsu Gen. Ltd.</u>

v. United States, 88 F.3d 1034, 1039 (Fed. Cir. 1996).  That said, "[t]he requirement of explanation presumes the expertise and experience of the agency and still demands an adequate explanation in the particular matter." CS Wind Vietnam, 832 F.3d at 1377.

The court concludes that Commerce was required to explain its choice between these two reasonable inferences regarding the significance of the logo provision.  Commerce has discretion to "make reasonable interpretations of the evidence and to determine the overall significance of any particular factor or piece of evidence." Me. Potato Council v. United States, 9 CIT 293, 300, 613 F. Supp. 1237, 1244 (1985).  Moreover, the Government correctly posits that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  Def.'s Suppl. Resp. at 4 (quoting Downhole Pipe & Equip., LP v. United States, 38 CIT __, __, 34 F. Supp. 3d 1310, 1315 (2014)).  However, in order to sustain its decision, the court requires that "reasons for the choices made among various potentially acceptable alternatives usually need to be explained." Asociacion Colombiana de Exportadores de Flores v. United States, 12 CIT 1174, 1177, 704 F. Supp. 1068, 1071 (1988). Cf, Trust Chem Co. v. United States, 36 CIT 310, 318, 819 F. Supp. 2d 1373, 1381 (2012) ("As long as Commerce reasonably explains its choice between imperfect alternatives, the court will not reject the agency's determination.").  Because the logo provision contained in the challenged sale agreement could indicate either that Chandan knew the sale was destined for export or that Chandan would not have been able to indicate its final destination, whether in its home market or abroad, Commerce was required to explain its choice between reasonable alternatives.

In INA Walzlager, Commerce identified verified, uncontroverted evidence strongly supporting an inference that the manufacturer-respondent knew its customers would resell the

**PUBLIC VERSION**

subject merchandise abroad.  957 F. Supp. at 265.  In contrast, here, Chandan's own treatment of the sale raised unanswered questions about its interpretation of the logo provision in the sales agreement.  Specifically, Chandan stated that it did not treat the [[                    ]] logo as evidence that the merchandise would be sold in [[              ]].  Letter from Chandan Steel Ltd. to Sec'y Commerce, re: Chandan Steel Ltd.'s Submission of Resp. to Suppl. Questionnaire of Sec. A, B and C at 3 (Jan. 25, 2018), P.R. 198.  Therefore, it also would have been rational for Commerce to infer that, absent evidence to the contrary, Chandan did not have reason to believe that merchandise stamped with a [[            ]] affiliate logo could not be sold in the Indian market.

Further, the Government argued that "[u]nder Commerce's practice, a company need not know the final destination of its exported merchandise, only that it be intended for export." Def.'s Br. at 8.  However, this argument does not overcome Commerce's failure to fully discuss the logo provision.  "The courts may not accept . . . counsel's post hoc rationalizations for agency action."  Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168–69 (1962).  An agency's determination must be "upheld . . . on the same basis articulated in the order by the agency itself."  Id.  Commerce itself did not invoke its prior practice when explaining its conclusion regarding the logo provision.  Moreover, even if Commerce had done so, an agency's "statement of what it 'normally' does or has done before . . . is not, by itself, an explanation of 'why its methodology comports with the statute.'"  CP Kelco US, Inc. v. United States, 949 F.3d 1348, 1356 (Fed. Cir. 2020) (quoting CS Wind Vietnam, 832 F.3d at 1377).  Therefore, the Government's explanation of Commerce's past practice, provided only in briefing to the court, may not fill the explanatory gap left by Commerce's statements on the record.

In sum, Commerce's conclusory treatment of this issue does not permit the court to review whether the agency met its obligation to make its decision based on the entire record. Commerce did not address information raised that may "cast doubt on the reasonableness of a position taken by the agency." Nat'l Mining Ass'n v. MSHA, 116 F.3d 520, 549 (D.C. Cir. 1997). Therefore, the agency's explanation does not illustrate whether Commerce accounted for and rejected the questions raised by the logo provision or "entirely failed to consider an important aspect of the problem." SKF USA Inc., 630 F.3d at 1374 (quoting State Farm, 463 U.S. at 43).

### C.    *Final Payment and Delivery Terms of the Challenged Sale*

Finally, in its analysis, Commerce should have discussed the final payment and delivery terms of the challenged sale. In its initial letter to Commerce, Chandan emphasized that the original offer the company made to [[            ]], was quoted in United States dollars, and provided for delivery in [[            ]]. Chandan's Initial Letter at 2. However, Chandan explained that after the offer was received, [[        ]] submitted a counteroffer, quoted in Indian Rupees and calling for delivery in [[        ]]. Id. This counteroffer was accepted, and the transaction was completed on the terms it contained. Id. Coalition argues now, and previously raised to Commerce, that these circumstances "would have indicated to Chandan that the sale was for the home market." Pl.'s Reply at 7; Petitioners' Initial Comments at 3. Commerce did not discuss or rely on this evidence in either its Preliminary Determination or its Final Determination and continued to treat the challenged sale as one for which Chandan would have known was for export. The Government contends that "[i]t is reasonable to infer that a price initially quoted in U.S. dollars was intended for export, even where the sale ultimately was consummated in rupees." Def.'s Br. at 9.

The court concludes that the accepted payment and delivery terms in [[          ]] counteroffer constitutes material evidence that Commerce was required to discuss because it raises an inference that Chandan had reason to believe the merchandise would remain in the home market.  A determination that fails to analyze or rebut material issues cannot be supported by substantial evidence.  Usinor v. United States, 26 CIT 767, 773 (2002).  Commerce did not address the payment or delivery terms at any point during the investigation, and the Government gives it sparse treatment, stating only that it does not undercut the evidence Commerce relied upon without explaining why it should not have been discussed by Commerce despite Coalition having raised this same argument to Commerce.  See Def.'s Br. at 9.  Therefore, Commerce has not indicated how or why the terms of the initial offer negate the terms on which the sale was ultimately consummated or why its inference was reasonable.  See SKF USA Inc., 630 F.3d at 1375 ("Commerce must explain why [the plaintiff's] concern is unwarranted or is outweighed by other considerations.").

In sum, the record in this case contained both evidence from which conflicting inferences concerning Chandan's knowledge may have been drawn and arguments from Coalition raising these issues.  In light of such evidence and arguments, Commerce was obligated to provide a reasoned analysis of the choices made in support of its determination. See Asociacion Colombiana de Exportadores de Flores, 704 F. Supp. at 1071; Trust Chem, 36 CIT at 318.  In the absence of this explanation, the court is unable to determine the path of Commerce's reasoning and thus concludes that it was not supported by substantial evidence.

## II.    *Commerce Met its Obligation to Conduct a Diligent Inquiry.*

Throughout its submissions to the court, Coalition has also alleged that Commerce was under a duty to undertake additional inquiry into Chandan's knowledge,  that the agency failed

to request additional information where it should have done so, and thus that the <u>Final Determination</u> was not in accordance with law.[3]  <u>See</u> Pl.'s Br. at 17–18; Pl.'s Reply at 9–10. Coalition argues that, "despite Petitioner repeatedly identifying concerns with Chandan's claims, at no point during the investigation did the agency request any additional explanation or information from Chandan regarding its claims or the information upon which it relied." Pl.'s Reply at 9–10.  In particular, Coalition points to the fact that it alerted Commerce that the agency had allegedly taken the position, in a prior investigation, that Indian law requires buyers to notify sellers when goods are being purchased for export.  Pl.'s Suppl. Resp. at 18.  According to Coalition, this issue is material because it goes directly to Chandan's knowledge and therefore, Commerce was required to investigate Coalition's argument and provide an explanation in response.  <u>Id.</u>  The Government, however, urges the court to recognize that Coalition never provided any legal authority to support this claim.  Def.'s Br. at 10.

The court notes that, on the one hand, it is clear that Commerce is required to conduct a diligent inquiry into any allegations of knowledge when deciding how to classify home market sales potentially exported outside the home market.  <u>See</u> <u>Allegheny Ludlum Corp. v. United States</u>, 24 CIT 1424, 1432–36, 215 F. Supp. 2d 1322, 1330–33 (2000).  On the other hand, it is also settled that interested parties bear the burden of developing an adequate record on contested issues.  <u>See</u> <u>QVD Food Co. v. United States</u>, 658 F.3d 1318, 1324 (Fed. Cir. 2011).  At oral argument, the Government argued that the two standards are not inconsistent, but rather that

---

[3]  During the investigation, Chandan also asked Commerce to request additional information from Coalition.  Chandan's Questionnaire Rebuttal at 5.  Chandan asserted that, as [[      ]] is an affiliate of [[      ]], Coalition should have had information establishing whether the merchandise at issue was exported for consumption.  <u>Id.</u>  Commerce did not request any information or evidence from Coalition.  Def.'s Suppl. Resp. at 13.  However, neither the Government nor Coalition argue that Commerce was required to request information from the Coalition or [[      ]] in order to meet the diligent inquiry standard.  <u>See id.</u>; Pl.'s Suppl. Resp. at 16–17.

the burden on the parties to develop the record comes first in time.  See Oral Arg. at 41:37–
43:08.  Specifically, the Government posits that Commerce must investigate allegations
presented by interested parties that raise a reasonable doubt about a material issue; however,
the agency has no independent duty to make a diligent inquiry into any and all information
highlighted by interested parties.  Id.

    The court agrees with the Government's exposition.  "[T]he burden of creating an
adequate record lies with [interested parties] and not with Commerce."  QVD Food Co., 658
F.3d at 1324 (quoting Tianjin Mach. Imp. & Exp. Corp. v. United States, 16 CIT 931, 936–37,
806 F. Supp. 1008, 1015 (1992)); see also NTN Bearing Corp. of America v. United States, 997
F.2d 1453, 1458 (Fed. Cir. 1993) (noting that the interested party had the "burden to supply the
information in the first instance").  Therefore, if Coalition sought an inference that [[      ]]
would have informed Chandan had the merchandise been purchased for export, "then it should
have furnished some proof to that effect."  See RZBC Grp. Shareholding Co. v. United States,
39 CIT __, __, 100 F. Supp. 3d 1288, 1312 (2015).  Moreover, while Coalition does identify
several issues that Commerce did not adequately address on the record, it has not identified any
specific information that Commerce should have solicited.  The diligent inquiry obligation does
not constitute a requirement that Commerce seek out additional information where an interested
party has not made a showing that additional information is required.  See Tianjin Mach. Imp.
& Exp. Corp., 806 F. Supp. at 1015 ("A requirement that Commerce must search out new
information in the guise of 'verification,' as plaintiffs suggest, is really a mandate that
Commerce must shoulder any burden that the plaintiffs choose not to meet.").  The court thus
concludes that Commerce fulfilled its duty of conducting a diligent inquiry and was not required
to do more here.

Court No. 18-00225                                                                 Page 25
*PUBLIC VERSION*

## CONCLUSION

In sum, Commerce's inadequate explanation on the record does not permit the court to discern the path of the agency's reasoning and fails to address detracting evidence that bears on issues material to Commerce's determination.  As such, Commerce has not satisfied its burden to provide a sufficiently reasoned explanation, and therefore its <u>Final Determination</u> was not supported by substantial evidence.  Accordingly, the court remands to Commerce for further proceedings consistent with this opinion.  Specifically, the court remands to Commerce for an explanation of the significance to its determination of the following: (1) Chandan's [[

]], containing a provision calling for export quality packaging; (2) Chandan's treatment of the challenged sale as a third-country market sale, rather than a [[

]] one, despite its contention that the logo provision indicated to the company that the sale was for export; and (3) the final payment and delivery terms of the challenged sale.  The court takes no position on the issue of whether, with more robust analysis and explanation, Commerce's determination may be deemed supported by substantial evidence.  Commerce shall file with the court and provide to the parties its remand results within 90 days of the date of this order; thereafter the parties shall have 30 days to submit briefs addressing the revised final determination with the court, and the parties shall have 30 days thereafter to file reply briefs with the court.

**SO ORDERED.**

                                                 /s/ *Gary S. Katzmann*
                                                 Gary S. Katzmann, Judge


Dated:  June 17, 2020
        New York, New York