Slip Op. 21-59

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COALITION OF AMERICAN FLANGE PRODUCERS, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Gary S. Katzmann, Judge <br> Court No. 18-00225 <br><br> *PUBLIC VERSION* |

**OPINION**

[The court sustains Commerce's Remand Results.]

Dated: May 13, 2021

Daniel B. Pickard, Stephanie M. Bell, and Cynthia C. Galvez, Wiley Rein LLP, of Washington, DC, for plaintiff.

Geoffrey M. Long, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were Jeffrey Bossert Clark, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Tara K. Hogan, Assistant Director. Of counsel was Kirrin Ashley Hough, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

      Katzmann, Judge: The court returns to a challenge to the U.S. Department of Commerce's ("Commerce") classification of a challenged sale as an export sale in an antidumping ("AD") investigation and to its associated 19 U.S.C. § 1677b(a)(1)(C) finding of home market non-viability. Before the court is Commerce's Final Results of Redetermination Pursuant to Court Remand, Oct. 6, 2020, ECF No. 56 ("Remand Results"), which the court ordered in Coalition of American Flange Producers v. United States, 44 CIT __, 448 F. Supp. 3d 1340 (2020) ("Coalition I"). In Coalition I, the court remanded so that Commerce could further explain certain aspects of its calculation of normal value in determining an AD duty margin for a foreign producer and

exporter, Chandan Steel Limited ("Chandan"), in the importation of stainless steel flanges from India into the United States.  Id. at 1345.  On remand, with explanation, Commerce continued to conclude that the challenged sale should be excluded from Chandan's home market sales database and that Chandan did not have a viable home market for normal value purposes.  Remand Results at 1.  Plaintiff Coalition of American Flange Producers ("Coalition"), an ad hoc association whose members manufacture stainless steel flanges in the United States, again challenges this determination.  Compl. at 2, Dec. 6, 2018, ECF No. 9; Pl.'s Comments on the Results of Remand Redetermination, Nov. 6, 2020, ECF No. 60 ("Pl.'s Br.").  Defendant the United States ("the Government") requests that the court affirm Commerce's Remand Results.  Def.'s Reply in Supp. of the Dep't of Commerce's Remand Redetermination, Feb. 2, 2021, ECF No. 67 ("Def.'s Br.").  The court affirms.

## BACKGROUND

The court set out the relevant legal and factual background of the proceedings in further detail in its previous opinion, Coalition I, 448 F. Supp. 3d at 1345–50.  Information relevant to the instant opinion is set forth below.

On August 16, 2018, Commerce issued Stainless Steel Flanges from India: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Critical Circumstances Determination, 83 Fed. Reg. 40,745 (Dep't Commerce Aug. 16 2018), P.R. 411 ("Final Determination") and accompanying issues and decision memorandum (Dep't Commerce Aug. 10, 2018), P.R. 406 ("IDM").  As explained in the court's previous opinion, "'[t]o determine whether a sale is a home market sale, Commerce objectively assesses whether, given the particular facts and circumstances, a producer would have known that the merchandise will be sold domestically or for export.'  If Commerce concludes that a producer knew or had reason to know,

at the time of the sale, that the merchandise was destined for export, Commerce may exclude the sale from the home market database." Coalition I, 448 F. Supp. 3d at 1346 (first quoting Stupp Corp. v. United States, 43 CIT __, __, 359 F. Supp. 3d 1293, 1310 (2019); and then citing INA Walzlager Schaeffler KG v. United States, 21 CIT 110, 123–25, 957 F. Supp. 251, 264–65 (1997)). Based on its application of this knowledge test, Commerce determined that certain reported sales should not be included in Chandan's home market sales database and, therefore, Chandan's home market of India was not viable as a basis for determining normal value. IDM at 37. Commerce accordingly used Chandan's reported third-country market sales to determine its AD duty margin. Id. During the investigation, Coalition challenged Commerce's determination to exclude one sale from Chandan's home market database -- the "challenged sale."[1] Letter from Wiley Rein LLP to Sec'y Commerce, re: Stainless Steel Flanges from India: Case Brief Regarding Chandan Steel at 4 (June 19, 2018), P.R. 401, C.R. 443. In its Final Determination, Commerce relied on two provisions in the contract for the challenged sale to determine that it was not a home market sale: (1) a provision requiring packaging of export quality and (2) a provision requiring the merchandise to be stamped with a [[         ]] logo. IDM at 37. As a result of using third-country market sales rather than Chandan's home market, Commerce calculated an AD margin of 19.16 percent for Chandan. Final Determination at 40,476.

Coalition filed this action to challenge Commerce's Final Determination related to the challenged sale. Summons, Nov. 6, 2018, ECF No. 1; Compl. Specifically, Coalition argued that "(1) Commerce's determination that the challenged sale was for export is unsupported by substantial evidence because Commerce failed to provide an adequate explanation for its findings

---

[1] This and further mentions of the "challenged sale" refer to Chandan's sale to [[      ]]. See also Coalition I, 448 F. Supp. 3d at 1348.

and failed to demonstrate a rational connection between the facts found and the determination made; and (2) Commerce did not act in accordance with law because it failed to undertake a diligent inquiry in response to Coalition's comments." Coalition I, 448 F. Supp. 3d at 1351. On June 17, 2020, the court remanded Commerce's determination that the challenged sale was for export because that determination was not adequately explained and thus not supported by substantial evidence, but (2) concluded that Commerce did meet its obligation to conduct a diligent inquiry. Id. The court also noted that it took no position "on the correctness of Commerce's determination" on remand. Id. Commerce filed its Remand Results with the court on October 6, 2020. Remand Results.[2] Coalition filed its comments on the Remand Results on November 6, 2020. Pl.'s Br. The Government replied on February 2, 2021. Def.'s Br.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(i). The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i): "[t]he court shall hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." A conclusion based on substantial evidence and in accordance with law requires Commerce to examine the record and provide an adequate explanation for its findings such that the record demonstrates a rational connection between the facts accepted and the determination made. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983); Jindal Poly Films, Ltd. of India v. United States, 43 CIT __, __, 365 F. Supp. 3d 1379, 1383 (2019). Commerce's findings may be supported by substantial evidence despite the existence of

---

[2] Many citations are to confidential filings for clarity in explaining the timeline of events. Public versions, often filed at later dates, are available on the public docket with corresponding pagination.

"contradictory evidence or evidence from which conflicting inferences could be drawn," Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir. 1994) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 487 (1951)), so long as that evidence is addressed and explained, CS Wind Vietnam Co. v. United States, 832 F.3d 1367, 1373–74 (Fed. Cir. 2016). The court also reviews the Remand Results "for compliance with the court's remand order." See Beijing Tianhai Indus. Co. v. United States, 39 CIT __, __, 106 F. Supp. 3d 1342, 1346 (2015) (citations omitted).

## DISCUSSION

The court remanded to Commerce for explanation of material record evidence related to the challenged sale that was unaddressed and may have undermined its decision to exclude the challenged sale from the home market database. Specifically, the court determined that "Commerce was obligated to discuss on the record . . . (1) the export quality packaging provision in Chandan's [[                              ]], (2) Chandan's treatment of the agreement's logo provision, and (3) the final payment and delivery terms of the sale." Coalition I, 448 F. Supp. 3d at 1352–53. The court concluded that "the record in this case contained both evidence from which conflicting inferences concerning Chandan's knowledge may have been drawn and arguments from Coalition raising these issues. In light of such evidence and arguments, Commerce was obligated to provide a reasoned analysis of the choices made in support of its determination." Id. at 1356 (citations omitted).

On remand, Commerce further explained its decision to exclude the challenged sale from Chandan's home market database and addressed each piece of evidence as directed by the court. Commerce noted that it "evaluated the totality of the evidence on the record, with particular attention to the evidence highlighted by the CIT." Remand Results at 6. In addition to the evidence

highlighted in its Final Determination and discussed in the court's previous opinion, Commerce explained that other considerations regarding the challenged sale supported its decision to exclude that sale from Chandan's home market database. Commerce further analyzed the initial negotiation terms, circumstances surrounding the negotiations, and the buyer's main business of "sales of traded merchandise . . . focused on exports." Id. at 6–7. Commerce noted that "[w]hile no one single factor may be considered dispositive," it found that, "when considered in its totality, the record supports [its] conclusion regarding Chandan's knowledge of the ultimate destination for the merchandise" from the challenged sale. Id. at 8.

Coalition again challenges Commerce's determination by claiming that its decision was not reasonably supported or explained because the newly discussed evidence in combination with the evidence previously identified by Commerce does not "demonstrate that Chandan knew or should have known that its sales to [[    ]] were for export." Pl.'s Br. at 4. In response, the Government characterizes Coalition's renewed claims as "a disagreement with Commerce's weighing of the evidence." Def.'s Br. at 5. The court is not persuaded by Coalition's challenges to the Remand Results for the reasons set out below.

### I. *Agreement Provisions*

Regarding a provision in the challenged sale contract that required export quality packaging, the court stated "[b]ecause the evidence in the record suggested that an export quality packaging provision may be indicative of either a home market or an export sale, Commerce needed to explain the logic supporting its decision to rely on the provision." Coalition I, 448 F. Supp. 3d at 1353 (citations omitted). On remand, Commerce explained that, regardless of some overlapping provisions in the challenged sale agreement and Chandan's [[

]], "Commerce had no reason to question Chandan's knowledge of ultimate destination

for any sales made to other customers" and disagreed that the evidence "necessarily detract[ed] from Commerce's conclusions." Remand Results. at 8–9; see also id. at 14 (discussing mill testing certificate provision). For this reason, Commerce explained that it did not place the same weight on the [[                    ]] provisions as those related to the challenged sale. Id. at 16. Rather, Commerce explained that this evidence "alone may not conclusively demonstrate exportation of the merchandise, [but] when viewed in light of other record information, these provisions are consistent with [Commerce's] conclusion." Id. at 8; see also id. at 14.

Coalition challenges Commerce's conclusion on the overlapping contract provisions as insufficiently explained and conclusory. See Pl.'s Br. at 7–10. Coalition argues that "it was illogical for Commerce to claim that the reason for disregarding the relevance of the sale is the non-viability of the home market when part of the agency's reason for taking the sale into account was to help determine the home market's viability." Id. at 9. In response, the Government highlights that "Commerce did not assign the same amount of weight to the facts of the [home market sale] as those related to the [challenged sale]." Def.'s Br. at 14. The Government argues that despite the overlapping provisions being consistent with either a home market or export sale, the evidence nevertheless "support[s] Commerce's conclusion regarding Chandan's knowledge of the ultimate destination for the merchandise when the record is considered in its totality." Id. at 10.

The court concludes that Commerce's explanation and analysis of the overlapping provisions is reasonable. As Commerce explained, conflicting inferences may be made based on this evidence in isolation, but in light of the entire record and the lesser weight Commerce placed on the home market sale, Commerce reached a reasonable conclusion. See Remand Results at 14, 16; Suramerica de Aleaciones Laminadas, 44 F.3d at 985 (stating that substantial evidence includes

"evidence from which conflicting inferences could be drawn"). Given Commerce's additional explanation, the court defers to Commerce's conclusion regarding this potentially conflicting evidence. <u>Fujitsu Gen. Ltd. v. United States</u>, 88 F.3d 1034, 1039 (Fed. Cir. 1996) (requiring deference to Commerce's experience and expertise when reviewing AD determinations) (citations omitted); <u>CS Wind Vietnam</u>, 832 F.3d at 1377 ("The requirement of explanation presumes the expertise and experience of the agency and still demands an adequate explanation in the particular matter.") (citation omitted).

### II. *Logo Requirements*

In its original opinion, the court noted that "[b]ecause the logo provision contained in the challenged sale agreement could indicate either that Chandan knew the sale was destined for export or that Chandan would not have been able to indicate its final destination, whether in its home market or abroad, Commerce was required to explain its choice between reasonable alternatives." <u>Coalition I</u>, 448 F. Supp. 3d at 1354–55. On remand, Commerce concluded that this logo provision was "consistent with a sale destined for outside of India" because sales to Indian customers and other customers abroad generally had different markings. <u>Remand Results</u> at 16. Commerce also noted that, because the logo provision did not indicate shipment to any particular destination, the destination of the sales merchandise "would not alter [its] ultimate conclusion" regarding the comparison market. <u>Id.</u> at 9. Again, Commerce noted that while not dispositive alone, "when considered in its totality, the record supports [its] conclusion." <u>Id.</u> at 16.

On this point, Coalition argues that Commerce erroneously "disregarded the argument that the logo is not indicative of an export sale." Pl.'s Br. at 10. Rather Coalition contends that "this conclusion only makes sense if (1) the logo is indicative of a sale to a particular non-Indian market (or group of markets) or (2) the logo cannot be used for sale in India." <u>Id.</u> at 10. Thus, Coalition

argues that the logo provision "provides no reasonable support for a finding that the sales were destined for export." Id. at 11. The Government responds that "Commerce reasonably concluded that a requirement for a [[                    ]], as was the case here, is consistent for a sale destined for outside of India." Def.'s Br. at 15.

The court concludes that Commerce's explanation of the logo provision was reasonable and adequately addressed on remand. Commerce's explanation of the differing logo requirements for the challenged sale and Chandan's other sales is based on a reasonable inference that the provision supported Chandan's knowledge that the challenged sale was destined for export. See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (requiring a demonstration of a rational connection between the agency's conclusion and the facts found). The court does not disagree with Coalition's contention that Commerce's conclusion must indicate that the logo indicates the goods were destined for export to a non-Indian market. Rather, the court recognizes that Commerce's explanation indicates that Commerce understood Chandan to know that the goods were destined for non-Indian markets, regardless of whether Chandan knew the exact export market. This is consistent with Commerce's knowledge test, which does not require knowledge of a particular destination for exported goods. See INA Walzlager Schaeffler KG, 957 F. Supp. at 263–64.

### III. Sale's Terms & Context

Finally, in its prior opinion, the court concluded that "Commerce [did not] indicate[] how or why the terms of the initial offer negate the terms on which the sale was ultimately consummated" given that the challenged sale was negotiated with terms that would indicate an export sale, but the final contract terms may have indicated a home market sale. Coalition I, 448 F. Supp. 3d at 1356 (citation omitted). On remand, Commerce explained that the final sales terms

> may weigh in favor of finding a domestic sale in many instances. However, in light of the various factors considered above, as well as the fact that the sales were

>negotiated with [[                    ]] of an India-based affiliate, which for extended periods prior to the [period of investigation] did not sell [[                    ]], we find that the record indicates otherwise.

Remand Results at 9–10.  In further support of this inference, Commerce "conclude[d] that Chandan had knowledge of sales behavior of its customers (and particular knowledge regarding these sales, given all of the factors explained above, including the particular negotiation history)." Id. at 15.  Commerce rejected Coalition's arguments regarding the final sales terms as a dispute over the weight that should be accorded to this piece of evidence.  Id. at 13.

Coalition contends that the initial offer or circumstances of negotiation of the challenged sale were not properly considered by Commerce.  First, Coalition argues that Commerce failed to address Chandan's statement that it did not believe the sale was destined for [[    ]] or any of the top three export markets and that Commerce's conclusion was thus "incomplete and unreasonable." Pl.'s Br. at 6.  Further, as it also argued to Commerce, Coalition asserts that Chandan's statement that it obtained public information regarding the Indian-affiliate company of the buyer for the challenged sale after it made the sale "strongly suggests that Chandan did not have the information at the time of the sale" and thus Chandan could not be presumed to have familiarity with its customer's main business of export sales.  Id. at 7.  Rather, Coalition argues that Commerce's analysis on this point was "based on speculation and a bootstrapping of tenuous conclusions with one another."  Id.; see also id. at 11.  The Government responds that Coalition's opposition to Commerce's remand explanation is based upon the possibility of drawing two inconsistent conclusions from the evidence.  Def.'s Br. at 8.  The Government also argues that "[c]onsistent with its practice and application of its knowledge test, Commerce did not presume that Chandan's knowledge regarding [[    ]]'s sales patterns was obtained at the time it acquired

the financial statement," but that instead "Commerce reasonably concluded that Chandan had knowledge of the sales behavior of its customers." Id. at 12 (citation omitted).

The court accepts Commerce's explanation of this evidence on remand and concludes that the inferences it drew from the record were reasonable. As the Government correctly notes, "the possibility of drawing two inconsistent conclusions form the evidence does not preclude the agency's finding from being supported by substantial evidence." Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 619–20 (1966)); see also Suramerica de Aleaciones Laminadas, 44 F.3d at 985; Def.'s Br. at 8. Thus, Commerce's conclusion that the initially negotiated terms, in light of the totality of the evidence and the circumstances of the negotiation, indicated that the challenged sale was for export was based on reasonable inferences and supported by substantial evidence. Id.; Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. Coalition's contention that Commerce disregarded Chandan's assertion that it did not know the particular final destination of the challenged sale is unpersuasive. Similarly, the court defers to Commerce's reasonable inference that Chandan was familiar with the behavior of its customer in light of the negotiation history. As discussed, Commerce enumerated the evidence that supported its conclusion that Chandan knew the sale was for export. That was all that was required of Commerce. See INA Walzlager Schaeffler KG, 957 F. Supp. at 263–64.

In short, the court accepts Commerce's explanation of the previously unaddressed evidence and concludes that, given the totality of the evidence, Commerce's Remand Results were based on substantial evidence.

## CONCLUSION

For the reasons stated above, the court sustains Commerce's <u>Remand Results</u> and enters judgment in favor of the Government.

**SO ORDERED.**

/s/ *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: <u>May 13, 2021</u>
New York, New York